**Stanley DORF, Plaintiff,**

v.

**The RON MARCH COMPANY, Ron March & Associates, Inc., and Ronald E. March, Defendants.**

No. 99–C–1116.

United States District Court, E.D. Wisconsin.

May 18, 2000.

Thomas G. Herz, Grant Killoron, for plaintiff.

David P. Faulkner, Rockford, IL, for defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Stanley Dorf sues Ron March and several businesses controlled by March (collectively "defendant") for breach of contract. On October 1, 1993, plaintiff entered into an agreement with defendant pursuant to which plaintiff advanced defendant $225,000 for the purpose of developing a shopping center. The agreement required defendant to commence the project or return the money to plaintiff with interest. Plaintiff alleges that defendant did neither. Plaintiff and defendant are citizens of Wisconsin and Illinois respectively and the court has diversity jurisdiction. Defendant now moves to dismiss the complaint for lack of personal jurisdiction.

## I. FACTUAL BACKGROUND

Some of the facts are undisputed and, in some respects, the parties' versions vary. Plaintiff states that in August 1993 defendant called him in his Milwaukee office soliciting investment in defendant's project to develop a shopping center. (Pl.'s Aff. ¶ 2.) Plaintiff states that subsequently he met with defendant in Milwaukee where defendant promoted his project and presented a proposed agreement. (Id. ¶ 3.) In this presentation defendant emphasized that he had previously developed shopping centers in Wisconsin, one in partnership with Herb Kohl who had since become a United States senator from Wisconsin. (Id. Ex. B.)

Around this time defendant also came to Milwaukee to solicit investment from another Milwaukee businessman, Kenneth Berke. (Berke Aff. ¶ 2.) Plaintiff states that defendant came to Milwaukee a second time and met with plaintiff and plaintiff's wife at the Brynwood Country Club about the agreement. (Pl.'s Aff. ¶ 7.) Plaintiff states that he and defendant negotiated the agreement by telephone and fax between plaintiff's office in Milwaukee and defendant's office in Schaumburg, Illinois. (Id. ¶ 3.) Plaintiff indicates that in the six years after the agreement took effect defendant met him in Kenosha, Wisconsin two or three times to discuss the project and also called and sent faxes to him in Wisconsin about it. (Id. ¶¶ 9, 10 & 11.)

Defendant states that in September 1993 Stephen Weiss, a mortgage broker and plaintiff's cousin, called him at his office in Schaumburg and said that plaintiff might be interested in investing with him. (Def.'s Aff ¶ 8.) Defendant states that shortly after this call he met with plaintiff and Weiss in Schaumburg. (Id. ¶ 9.) [1] Defendant further states that he and plaintiff negotiated the agreement via tele-

phone, mail and fax, (id. ¶¶ 9, 10 & 11), and that during the week of October 18, 1993, after the agreement was signed, he met with plaintiff and plaintiff's wife in Milwaukee about the project.[2] (Id.) Defendant acknowledges that he met with plaintiff in Wisconsin on one or two occasions after the agreement was in effect. (Id. ¶ 14.)

## III. DISCUSSION

Plaintiff has the burden of proving that this court has personal jurisdiction over the defendant. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). The burden, however, is not a heavy one. Johnson Worldwide Assoc., Inc. v. Brunton Co., 12 F.Supp.2d 901, 906 (E.D.Wis.1998). Plaintiff need only make a prima facie showing of the existence of personal jurisdiction. Id.

In considering a motion to dismiss for lack of personal jurisdiction, I am not limited to facts alleged in the complaint but may consider affidavits. Kaufmann v. United States, 840 F.Supp. 641, 649 (E.D.Wis.1993). Here, the affidavits disclose the existence of disputed facts. However, plaintiff is entitled to have any conflicts in the affidavits resolved in his favor. RAR, 107 F.3d at 1275.

In diversity cases a federal court has personal jurisdiction over the parties only if a court in the state in which the federal court sits would have jurisdiction. Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995). To determine whether this court has personal jurisdiction I first must decide whether defendant is subject to personal jurisdiction under Wisconsin's long arm statute and, if so, whether exercising jurisdiction under the statute is consistent with the due process requirements of the Fourteenth Amendment. Daniel J. Hartwig Assoc., Inc. v. Kanner, 913 F.2d 1213, 1216 (7th Cir.1990).

---

1. Defendant provides a copy of his letter confirming that plaintiff, defendant and Weiss met although the letter does not specify the location.

2. Defendant provides a copy of his letter to plaintiff discussing a possible Milwaukee meeting during the week of October 18.

## A. The Wisconsin Long–Arm Statute

Plaintiff relies on both § 801.05(1)(d) and § 801.05(5)(a) of Wisconsin's long-arm statute.

■ Section 801.05(1)(d) provides for personal jurisdiction in any action over "a defendant who when the action is commenced . . . [i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate or otherwise." The statute is to be liberally construed in favor of exercising jurisdiction and is intended to confer jurisdiction to the extent allowed by due process. *Johnson Worldwide,* 12 F.Supp.2d at 906.

■ A person is engaged in substantial activities in the state when the activities are "systematic and continuous." *Harley–Davidson Motor Co. v. Motor Sport, Inc.,* 960 F.Supp. 1386 (E.D.Wis. 1997). A defendant generally has "substantial and not isolated" contacts with the state if it "solicit[s], create[s], nurture[s], or maintain[s], whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state." *Stauffacher v. Bennett,* 969 F.2d 455, 457 (7th Cir.1992). Even if a nonresident never sets foot in Wisconsin, the existence of a continuing business relationship with someone in Wisconsin is enough to warrant an inference that the defendant benefits from services provided in Wisconsin "and could therefore be required, as a quid pro quo, to submit to the jurisdiction of the state's courts." *Id.* at 457. *See also PKWare, Inc. v. Meade,* 79 F.Supp.2d 1007 (E.D.Wis.2000).

■ Five factors are relevant to the question of whether a defendant's Wisconsin contacts are "substantial" and not isolated for purposes of § 801.05(1)(d): (1) the quantity of contacts, (2) the nature and quality of the contacts, (3) the source of the contacts and their connection with the cause of action, (4) the interests of the State of Wisconsin, and (5) the convenience of the parties. *Nagel v. Crain Cutter Co.,* 50 Wis.2d 638, 648–50, 184 N.W.2d 876 (1971).

■ I begin the analysis by considering the *Nagel* factors, the first of which is quantity of contacts. The record shows that in the course of negotiating the agreement with plaintiff and subsequently maintaining their business relationship defendant had a substantial number of Wisconsin contacts. In the fall of 1993 defendant visited Milwaukee twice to solicit or discuss plaintiff's investment in defendant's development project. Defendant also visited Milwaukee on another occasion to solicit investment in the project from another Milwaukee investor, Kenneth Berke. In addition, in the course of negotiating the agreement defendant also contacted plaintiff in Wisconsin by telephone and fax on a number of occasions.

After plaintiff and defendant entered into the agreement defendant visited Wisconsin two or three more times to discuss his progress with plaintiff. And, in the course of their business relationship defendant also continued to contact plaintiff in Wisconsin by telephone and, more frequently, by fax. Thus, in the six years after September 1993 defendant had a significant quantity of Wisconsin contacts in connection with his business relationship with plaintiff. A defendant who maintains a continuing business relationship with a Wisconsin resident whether through personal contacts or long distance communications generally has "substantial and not isolated" contacts with the state. *Stauffacher,* 969 F.2d at 457; *PKWare,* 79 F.Supp.2d at 1013.

The quality of defendant's Wisconsin contacts was also high for personal jurisdiction purposes. The highest quality contact is a personal visit. Here, defendant made four or five Wisconsin visits in connection with the agreement. The next highest quality contact is a personal contact of another type. Here, defendant had many personal contacts with Wisconsin by phone or fax.

With respect to the third *Nagel* factor, the source of the cause of action, plaintiff's lawsuit arises directly from defendant's Wisconsin contacts made in creating and nurturing the agreement which defendant is alleged to have breached. Although the last two *Nagel* factors are less important, Wisconsin has an interest in protecting its residents from breach of contract. Additionally, the convenience of the parties does not weigh against this forum. Defendant can drive from his office in Schaumburg to the federal courthouse in Milwaukee in little more time than it would take to get to the federal courthouse in Chicago.[3]

Although each case must be determined on its own facts, jurisdiction over defendant pursuant to § 801.05(1)(d) is also supported by a comparison to prior cases. In *PKWare*, 79 F.Supp.2d at 1013, an Ohio defendant had a six year business relationship with a Wisconsin company which involved contact by mail, phone and fax but only one personal visit. This court found that defendant's Wisconsin contacts were sufficient to confer personal jurisdiction. Here, in the course of establishing and maintaining his relationship with a Wisconsin resident, defendant made four or five personal visits to Wisconsin as well as numerous phone and fax contacts. These contacts are surely sufficient to warrant an inference that defendant benefitted from services provided in Wisconsin and could therefore be required as a quid pro quo to submit to the jurisdiction of Wisconsin courts. *See Stauffacher*, 969 F.2d at 457; *see also Harley–Davidson Motor Co. v. Motor Sport, Inc.*, 960 F.Supp. 1386, 1387 (E.D.Wis.1997) (defendant with a twenty year distributorship relationship with Wisconsin plaintiff held to have engaged in substantial Wisconsin activity even though the relationship was conducted by telephone, mail and fax).

## B. Constitutional Considerations

■ Wisconsin courts presume that compliance with the Wisconsin long-arm statute satisfies the requirements of due process as well. The presumption may be rebutted by a defendant using the five *Nagel* factors discussed above, *Lincoln v. Seawright*, 104 Wis.2d 4, 10–11, 310 N.W.2d 596 (1981); *International Communications, Inc. v. Rates Tech., Inc.*, 694 F.Supp. 1347, 1350 (E.D.Wis.1988), or by looking to federal law.

■ Due process permits a Wisconsin court to exercise jurisdiction over a defendant who has "minimum contacts" with this state such that maintenance of a lawsuit here "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The amount and kind of activities that make it reasonable and just to subject a defendant to jurisdiction depend upon the facts of each case. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

■ What the *International Shoe* "minimum contacts" standard means in a particular case depends on whether the plaintiff wishes the court to assert "general" or "specific" jurisdiction. *RAR*, 107 F.3d at 1277. "Specific jurisdiction refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'" *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). When a controversy is related to or arises out of a defendant's contacts with the forum, a relationship among the defendant, the forum and the litigation is the essential foundation of personal jurisdiction. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868. General jurisdiction meanwhile is for suits neither arising out of nor related to the defendant's contacts, and is permitted only where the defendant has "continuous and

---

**3.** The courthouse for the Northern District of Illinois is located in downtown Chicago.

systematic general business contacts" with the forum. *Id.* at 414 n. 9, 104 S.Ct. 1868.

 The rule in the Seventh Circuit is that in a breach of contract case it is only the dealings between the parties regarding that contract that are relevant to the minimum contacts analysis. *RAR, Inc.,* 107 F.3d at 1278. The touchstone is whether the defendant purposefully established minimum contacts in the forum state such that jurisdiction is fair and just for that case. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A defendant's conduct and connection with Wisconsin must be such that it "should reasonably anticipate being haled into court [here]." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Generally, "[w]hen a corporation 'purposely avails itself of the privilege of conducting activities within the forum State' . . . it has clear notice that it is subject to suit there." *Id.* at 297, 100 S.Ct. 559 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Where a nonresident:

> has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (citation omitted).

 The facts in the present case, the five *Nagel* factors and comparable decisions show that jurisdiction over defendant comports with due process. Defendant's Wisconsin contacts in the course of his business relationship with plaintiff were continuous and systematic. Initially, defendant visited Milwaukee to solicit an investment relationship with plaintiff. A short time later he visited Milwaukee again to meet with plaintiff and his wife about the investment. Once the parties had established a business relationship defendant met with plaintiff about the project in Wisconsin on two or three more occasions.

Defendant also contacted plaintiff in Wisconsin about their business by phone, mail and fax on a number of other occasions. Thus, defendant had continuous personal contacts with plaintiff over a period of approximately six years, all in connection with their business relationship. This amount of contact is sufficient to satisfy due process concerns. Defendant's own actions of seeking money from and entering into a contract with a Wisconsin investor and maintaining and nurturing the relationship over a six year period created a substantial connection with this forum. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. Where a defendant who has purposefully directed his activities to forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would make jurisdiction untenable. *Id.* at 477, 105 S.Ct. 2174. *See also PKWare,* 79 F.Supp.2d at 1015.

Defendant presents no basis for concluding that it would be unfair or unreasonable for Wisconsin to exercise jurisdiction over him. Here, as in *Burger King,* defendant created or assumed a continuing obligation between himself and a resident of this forum and thus purposefully availed himself of the privilege of conducting business in Wisconsin. He personally visited Wisconsin in connection with this business four or five times. *See Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (physical visits to the forum state enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there). *See also Daniel J. Hartwig Assoc.,* 913 F.2d at 1218.

Thus, based on defendant's activities over the six years prior to the commencement of the lawsuit, the exercise of jurisdiction by this court "does not offend tradi-

tional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. Defendant could have reasonably anticipated being haled into court here. *See World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. His contacts with plaintiff in Wisconsin were not random, fortuitous or attenuated, *see Burger King,* 471 U.S. at 486, 105 S.Ct. 2174, but rather part of a continuing business relationship that created a substantial connection with this forum. *See id.* at 475, 105 S.Ct. 2174; *see also Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868.

Because I find that defendant is subject to this court's jurisdiction based on § 801.05(1)(d) it is unnecessary to analyze whether jurisdiction is also proper under § 801.05(5)(1).

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss for lack of personal jurisdiction is **DENIED.**